## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALVIN HARMON, | * |
| *Plaintiff,* | * |
| v. | *   Civil Action No. RDB-25-1386 |
| COASTAL HOSPICE, INC., | * |
| *doing business as* COASTAL HOSPICE, | |
| | * |
| *Defendant.* | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### **MEMORANDUM OPINION**

In this employment discrimination action, Plaintiff Alvin Harmon, a Black man, has filed a three-count Complaint against his former employer, Defendant Coastal Hospice, Incorporated ("Defendant" or "Coastal"). *See generally* (ECF No. 1). He claims that he faced race discrimination (Count I), retaliation (Count II), and a hostile work environment (Count III) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't §§ 20-601 *et seq.* The factual allegations in this case center on Harmon's interactions from March 2023 to September 2024 with his supervisor, Lorena Lovely,[1] a White woman. Harmon claims that, at various times over that eighteen-month span, Lovely racially harassed him in both public and private

---

[1] The Complaint (ECF No. 1) and the parties' briefing on the Motion to Dismiss (ECF Nos. 16, 17, 18) all use the name Lorena Lovely. However, the Court notes that the documents Defendant filed alongside its Motion to Dismiss all use the name Ann Lovely. *See generally* (ECF No. 16-3). Because the Court accepts the factual pleadings in the Complaint as true at this stage, *see Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citation omitted), this Memorandum Opinion uses the name Lorena Lovely.

conversations. On September 25, 2024, Harmon sent an email to Coastal's human resources department reporting his allegations about Lovely and asking the company to investigate. He alleges that, instead of investigating, Coastal terminated his employment on October 22, 2024. This lawsuit followed.

Now pending is Coastal's Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 16.) The Court treats the pending Motion solely as a motion to dismiss and so does not consider matters outside the pleadings. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.[2] The Court has reviewed the parties' submissions. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the following reasons, the Court DENIES Coastal's Motion to Dismiss (ECF No. 16).

## BACKGROUND

At the motion-to-dismiss stage, the Court accepts all well-pleaded facts in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Unless otherwise noted, the Court takes the facts below from the Complaint (ECF No. 1) and are taken as true solely for the purpose of deciding this Motion (ECF No. 16).

Defendant Coastal is a Maryland nonprofit corporation with more than two-hundred employees. (ECF No. 16-1 at 1.) It provides full-scope end-of-life hospice care to residents of

---

[2] Harmon brings each of his three counts under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as well as the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't §§ 20-601 *et seq.* The Court has federal question subject matter jurisdiction over the Title VII claims, *see* 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367.

Dorchester, Wicomico, Somerset, and Worchester counties of Maryland, on the State's lower Eastern Shore. (*Id.*) Plaintiff Alvin Harmon, a Black man in his late fifties, began his employment with Coastal on February 12, 2017. (*Id.* ¶ 7.) From July 2021 to October 22, 2024, he worked as Defendant's Director of Bereavement, Spiritual, and Supportive Services. (*Id.* ¶¶ 8, 20.) That position made him part of Coastal's senior leadership team. (*Id.* ¶ 9.) He claims he was the only Black person among that group, and one of just a handful of Black persons employed by Coastal generally. (*Id.*)

Harmon claims that he was a valued and valuable member of the Coastal senior leadership team. (*Id.* at 2.) Indeed, he claims that he was the "face of Coastal." (*Id.*) He alleges that he was never disciplined and that his supervisors never called his work into question. (*Id.* ¶ 11.) Harmon states that, at Defendant's request and of his own initiative, he routinely appeared on local news as Coastal's representative. (*Id.* ¶ 10.) He also attended community events and church services. (*Id.*) The stated goal of these efforts was to help Coastal in its outreach to "historically underserved and ignored communities of color" on Maryland's Lower Eastern Shore. (*Id.*) He claims that, as the only Black member of the senior leadership team, he was uniquely positioned to do this. (*Id.* ¶¶ 9–10.)

On September 25, 2024, Harmon sent an email to Coastal's human resources department reporting eight discrete instances of what he terms harassment and discrimination. (*Id.*) In reporting, he also stated that Coastal could not tolerate such behavior as it prevented him from fulfilling his role. (*Id.*) Each of the eight instances involved Harmon and Lorena Lovely, a White woman. During the relevant period of March 2023 through September 2024,

Lovely was Coastal's Chief Clinical Officer and Harmon's supervisor.[3] (*Id.*) The following are Harmon's eight allegations of discrimination and hostility by Lovely, which he included in his September 25, 2024, email to Coastal's human resources department:

(i)     On March 18, 2023, The Joint Commission, a nonprofit organization that accredits health care organizations and programs in the United States,[4] was auditing Coastal. The two auditors were Black women. Harmon alleges that, during the audit, Lovely took him aside and complained to him that she felt that the auditors were "'being racist towards her'" as a White woman. Lovely then immediately showed Harmon a picture of her husband, a Black man, and asked him to show that picture to the auditors "so as to 'prove' that [Lovely] is not racist." Harmon claims that he felt offended and isolated by this conduct. He claims that he did not feel comfortable and left the situation. (*Id.* ¶ 15(a).)

(ii)    In October 2023, Coastal held a meeting to discuss its employee grooming policy. Harmon told the Coastal employees running the meeting that the company's policies regarding acceptable hairstyles and nail length and material could be seen as targeting employees of color.[5] He alleges that Lovely

---

[3] The Complaint alleges, and Defendant does not contest, that Lovely was later promoted to serve as Coastal's President and Chief Executive Officer. (*Id.* ¶ 12.)

[4] The Court takes judicial notice of this information from The Joint Commission's publicly available website.

[5] In his Complaint, Harmon claims that his opposition to Coastal's grooming policies was valid insofar as the policies may have run afoul of Maryland's 2020 law, the Creating a Respectful World for Natural Hair ("CROWN") Act. *See* Md. Code Ann., State Gov't § 20-101(f)–(g). (ECF No. 1 ¶ 15(b) n.1.) That law defines race as "includ[ing] traits associated with race, including hair texture, afro hairstyles, and protective hairstyles," and defines "protective hairstyle" as "includ[ing] braids, twists, and locks."

4

immediately turned to him, pointed at him, and yelled "Racist!" multiple times. He further alleges that Lovely stated that she did not want anyone with "unnatural" hair or nails to be employed by Coastal. Harmon claims that he felt targeted and humiliated. He claims that Lovely acted in a deliberate attempt to undermine him and his position as the sole Black person on the senior leadership team. (*Id.* ¶ 15(b).)

(iii)     On July 10, 2024, Defendant opened a Thrift Store. During the opening ceremony, Lovely was standing near Harmon and two other members of the company's senior leadership team, Holly Murray and Liz Arkuzeski. Lovely stated that she, Murray, and Arkuzeski were "the Big Three" in Coastal's leadership group. She allegedly then turned to Harmon, said that he could be their driver, and then laughed. Harmon claims that he felt humiliated by this comment. (*Id.* ¶ 15(c).)

(iv)     On August 5, 2024, Harmon attended a meeting he had scheduled with Coastal's human resources department to discuss his concerns about Lovely's alleged behavior. When he arrived at the meeting, however, Lovely was already present. Harmon alleges that he had requested a private meeting, outside of Lovely's presence. Harmon then left the meeting. He claims that he felt betrayed by Coastal for, in his terms, not affording him an impartial opportunity to voice his concerns of racial discrimination. He claims that this was part of Coastal's ongoing attempts to "chill" his opposition to what he perceived to be racial discrimination at the workplace. (*Id.* ¶ 15(d).)

5

(v)     At some point later in August 2024, Lovely told Harmon that she regularly referred to her Black nephew as "boy," despite her husband and other Black persons asking her to refrain from doing so and noting the racist connotation of the term. Harmon claims that he was uncomfortable with Lovely's decision to talk to him about this. (*Id.* ¶ 15(e).)

(vi)    On September 9, 2024, Harmon saw that Lovely wrote a Facebook post complaining about people "talking loudly" on the phone about their "momma and baby daddy." Harmon claims that he could immediately tell that Lovely was stereotyping Black people. He further claims that the post made him feel that neither Lovely nor Coastal valued him as an employee and did not support him as they would a White employee. (*Id.* ¶ 15(f).)

(vii)   On September 23, 2024, Coastal held a meeting to review procedures for live patient discharges. The meeting was led by the company's Director of Quality Control. In a live patient discharge, the patient is involuntarily discharged from hospice care before natural death. The Complaint asserts that these are traumatic events for both the patients and their loved ones. It further states that a live patient discharge can have negative health effects for the patient because the patient loses access to critical care and attendant hospice resources. At the meeting, Harmon noted that live patient discharges disproportionately affect Black patients. He alleges that Lovely disagreed, dismissed Harmon's concern, and refused to engage him on the subject. He claims that this interaction

6

solidified his impression that Coastal did not value him as a Black employee and would not support him as they would a White employee. (*Id.* ¶ 15(g).)

(viii)    On September 24, 2024, Harmon requested that Coastal fill the long-vacant positions subordinate to him as the Director of Bereavement, Spiritual, and Supportive Services. Specifically, he asked the company to hire a full-time Bereavement Counselor and a Spiritual Care Counselor. He claims that the positions had been vacant for months and, as a result, he had worked additional hours without an increase in pay. He states that he was the only department head without staffing and managerial support. He told Coastal that he could not do his own work as well as that of a Bereavement Coordinator. He made this request to Lovely, his supervisor. Lovely immediately dismissed the request. Harmon claims that Coastal had already budgeted for the positions. He alleges that Coastal extended support to other departments led by White employees, but not to him, the sole Black department director. (*Id.* ¶ 15(h).)

Harmon alleges that, in his email of September 25, 2024, he asked Coastal's human resources to investigate Lovely's alleged hostility and discriminatory behavior. (*Id.* ¶ 18.) He further alleges that he did not disclose these purported events to any of Coastal's employees, volunteers, clients, patients, or community partners. (*Id.*) He claims that the company did not conduct any investigation. (*Id.* ¶ 19.)

Harmon was terminated less than one month later, on October 22, 2024. (*Id.* ¶ 20.) The Complaint states that Coastal told Harmon that it had terminated his employment because it believed that he had lied in his September 25, 2024, email to human resources. (*Id.* ¶ 20.)

Harmon states that Coastal did not offer any explanation for why it believed that he was lying in his email, nor did it offer him any evidence of lying. (*Id.*) Instead, Harmon claims that Coastal's termination of him was motivated by its own desires and those of Lovely. (*Id.* ¶ 22.) He contends that Coastal acted in retaliation to his act of reporting racial discrimination, harassment, and hostility in the workplace. (*Id.*) The Complaint alleges that Coastal's employee handbook and internal policies did not provide for termination in such circumstances. (*Id.* ¶ 23.) It further alleges that, even if the allegation that Harmon was lying were believable, Coastal was obligated to consider and impose lesser discipline. (*Id.*) Harmon alleges that the company neither considered nor imposed lesser discipline. (*Id.* ¶ 24.) The decision to terminate, he claims, coupled with his lack of a disciplinary record, demonstrate that Coastal terminated Harmon because of its own racial animus and in retaliation to his reporting of racial discrimination by one of its employees. (*Id.*)

At some point after his termination from Coastal and prior to filing this suit, Harmon brought a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 6.) On February 21, 2025, the EEOC issued Harmon a Notice of Right to Sue letter.[6] (*Id.*) Harmon filed this three-count lawsuit on May 1, 2025. *See generally* (ECF No. 1). He brings all three claims under both Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't §§ 20-601 *et seq.* (*Id.* ¶¶ 28–39, 40–49, 50–55.) Count I alleges race

---

[6] It is uncontested that Harmon exhausted Title VII's administrative-remedy requirements.

discrimination. (*Id.* ¶¶ 28–39.) Count II alleges retaliation. (*Id.* ¶¶ 40–49.) Count III alleges hostile work environment. (*Id.* ¶¶ 50–55.)

Coastal filed the pending Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on June 16, 2025. (ECF No. 16.)

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. "A Rule 12(b)(6) motion tests the sufficiency of a complaint; it does not, however, 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To survive such a motion, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Under this plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). It must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678. In other

9

words, the factual allegations in the complaint, taken as true, must "permit the court to infer more than the mere possibility of misconduct" by the defendant. *Id.* at 679.

## ANALYSIS

Coastal moves to dismiss Harmon's entire three-count Complaint (ECF No. 1). *See generally* (ECF No. 16). All three counts arise under both Title VII of the Civil Rights Act of 1964 and the Maryland Fair Employment Practices Act. (ECF No. 1 ¶¶ 28–39, 40–49, 50–55.) Harmon adequately pleads plausible claims in each of the three counts. As such, Harmon's Motion to Dismiss (ECF No. 16) is DENIED.

### I.    Count I: Race Discrimination

In Count I, Harmon alleges that Coastal discriminated against him because of his race (Black), in violation of Title VII and the Maryland Fair Employment Practices Act. (*Id.* ¶¶ 28–39.) Courts evaluating discrimination claims under the Maryland law apply the same standards and case law as Title VII discrimination claims. *See Magassouba v. Prince George's Cnty.*, 773 F. Supp. 3d 196, 214–15 (D. Md. 2025); *Passwaters v. Wicomico Cnty.*, No. RDB-18-2923, 2019 WL 6341623, at *8 (D. Md. Nov. 27, 2019). As such, the Court's discussion focuses on Title VII.

Title VII of the Civil Rights Act of 1964 prohibits an employer from "discharg[ing] an individual, or otherwise . . . discriminat[ing] against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a); *Johnson v. Balt. City*, 163 F.4th 808, 814 (4th Cir. 2026). A plaintiff may prove discrimination through "one of two methods of proof: (1) demonstrating through direction evidence that [his] race was a motivating factor in the employer's adverse employment action; or (2) relying on the burden

10

shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Johnson*, 163

F.4th at 814 (citing *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019);

*Wannamkaer-Amos v. Purem Novi Inc.*, 126 F.4th 244, 255 (4th Cir. 2025)).

To survive a motion to dismiss on a claim of race discrimination pursuant to Title VII, a plaintiff must plead sufficient facts that, if true, would show "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) the adverse employment action occurred "under circumstances giving rise to an inference of unlawful discrimination.""[7] *Id.* at 815 (citing *Wannamker-Amos*, 126 F.4th at 255; *Noonan v. Consolidated Shoe, Co., Inc.*, 84 F.4th 566, 572 (4th Cir. 2023)). Here, the parties agree that the Complaint sufficiently alleges the first and second elements. It is uncontested that Coastal terminated Harmon's employment on October 22, 2024. Nevertheless, Coastal argues that Harmon suffered no adverse employment action. (ECF No. 16-1 at 4–5.) It also argues that the fourth

---

[7] Coastal argues that a plaintiff alleging race discrimination *must* meet the fourth element by showing that similarly situated employees outside the protected class received more favorable treatment. (ECF No. 16-1 at 4 (quoting *Tabb v. Bd. of Educ. of Durham Pub. Schs.*, 29 F.4th 148, 157 (4th Cir. 2022)).) That argument "misapprehends the requirements of Title VII: [a plaintiff] is not required as a matter of law to point to a similarly situated . . . comparator in order to succeed" on a claim of discrimination. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003) (citing *Dennis v. Columbia Colleton Med. Ctr.*, 290 F.3d 639, 644–45 (4th Cir. 2002)); *see also Noonan v. Consol. Shoe Co., Inc.*, 84 F.4th 566, 573 ("Of course, [a plaintiff] doesn't need a . . . comparator to establish a prima facie case of . . . discrimination." (internal citation omitted)). Although "[c]ourts frequently reframe the fourth element . . . as 'similarly situated comparators,'" *Johnson*, 163 F.4th at 815, "comparator evidence is [not] the final answer in discrimination law." *Laing v. Fed. Express Corp.*, 703 F.3d 713, 720 (4th Cir. 2013). At the motion-to-dismiss stage, a plaintiff bears the burden of pleading facts sufficient to raise an inference of discrimination. *See Johnson*, 163 F.4th at 815. While comparator evidence "has a useful place," *Laing*, 703 F.3d at 720, it is simply not mandatory to plead a case beyond a motion to dismiss.

element, the existence of circumstances giving rise to an inference of unlawful discrimination, is not met. (*Id.* at 4–5.)

As regards the third element, Harmon suffered an adverse employment action when he was terminated by Coastal on October 22, 2024. The United States Court of Appeals for the Fourth Circuit recently explained that an "adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998)). Termination is an adverse employment action. *Id.*; *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) (internal citations omitted). The third element is quite clearly met here.

Notwithstanding that straightforward conclusion, Coastal argues that Harmon failed to allege an adverse employment action because the Complaint does not "establish whether he suffered any adverse employment actions *because of* Ms. Lovely's discrimination." (ECF No. 16-1 at 4.) This argument conflates the third and fourth elements of the discrimination claim. The third element requires the plaintiff to plead the existence of an adverse employment action. *Johnson*, 163 F.4th at 815 (internal citations omitted). The fourth element requires the plaintiff to plead facts that, if true, show that the adverse employment action occurred "under circumstances giving rise to an inference of unlawful discrimination." *Id.* (quoting *Wannamaker-Amos*, 126 F.4th at 255). As noted above, Harmon pleads the third element by pleading that he was terminated. The fourth element, discussed on its merits below, is a separate inquiry.

12

Coastal's argument, that Harmon fails to plead an adverse employment action taken because of Lovely's alleged discrimination, also adds a burden to the prima facie case that Harmon does not bear at this stage. In essence, by stating that Harmon must allege that Coastal Harmon discriminated against him *because* Lovely discriminated against him, Coastal asserts that Harmon must plead discrimination twice. The text of Title VII does not require that. The statute dictates that "[i]t shall be . . . unlawful . . . for an employer to . . . discriminate against any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a). Therefore, to succeed on a claim of discrimination under Title VII, a plaintiff need only show that his employer discriminated against him because of some protected trait. He need not, however, show that his employer discriminated against him because of some other employee's discrimination against him. At the motion-to-dismiss stage, a plaintiff need only allege facts that, if true, create a plausible claim to relief as to the employer's discrimination. In sum, Harmon's arguments that the third element is not met are incorrect as a matter of both law and fact.

Harmon has sufficiently pleaded the fourth element of race discrimination because he has pleaded facts giving rise to an inference of discrimination. Although Title VII uses the term "because of," the Supreme Court has repeatedly explained that this is not but-for causation but a "lessened" standard. *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (discussing Supreme Court causation decisions, including *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). This requires a plaintiff to plead facts suggesting "some connective thread between the alleged mistreatment and the protected status." *Gough v. Rock Creek Sports Club*, No. PJM-19-3533, 2021 WL 795447, at *2 (D. Md. Mar. 2, 2021). This

standard is not met, however, when a court would have to speculate to fill the gaps in a complaint. *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015). In *Rock Creek Sports Club*, the plaintiff alleged that she had been discriminated against by her employer based on her race (white), gender (female), religion (Catholic), national origin (United States of America), and age (forty-eight). 2021 WL 795447, at *1. The Court explained that "[o]ther than these conclusory allegations, the [c]omplaint offered little context for [the p]laintiff's claims." The Court was not even able to determine from the complaint the nature of the plaintiff's employment with Rock Creek Sports Club. *Id.* In giving the facts of the case, the Court often had to speculate as to many relevant facts. *Id.* ("apparently suggesting that she was discriminated against as an hourly worker"; "it appears that [p]laintiff served as a 'Group Exercise Instructor,' paid hourly"; "[a]s best the Court can tell, [p]laintiff's main allegation of misconduct . . . "; "[a]nother stray allegation is that . . . "). The Court found that the plaintiff had not alleged sufficient connective thread between her alleged mistreatment and her protected status. *Id.* at *2.

Here, Harmon's Complaint does not require the Court to speculate as to the connection between the alleged mistreatment and his protected status. He alleges that he was subject to discrimination from his supervisor, Lovely, from March 2023 through September 2024. His September 25, 2024, email to Coastal alleged eight discrete instances of discrimination by Lovely and Coastal. Many of those alleged interactions focused squarely on race, particularly Harmon's race. For one example, Harmon alleges that, in a Coastal meeting about employee grooming policies, he raised concerns that the grooming policies may disparately impact Black employees. He claims that Lovely stood up, pointed at him, and yelled

"racist" multiple times. According to the Complaint, no other official of Coastal intervened during that meeting.

As regards his termination, Harmon alleges that he was terminated by Coastal after raising complaints with the human resources department regarding Lovely's purported conduct towards him. Further, he contends that Coastal conducted no investigation into Lovely's conduct, but found him to have fabricated numerous of the complaints in his September 25, 2024, email to human resources, without providing Harmon any explanation as to the grounds for that conclusion. He alleges that, in spite of the company's own internal policies obligating the company to consider and impose lesser consequences, Coastal terminated him without considering or imposing lesser consequences. Finally, he alleges that his White counterparts would have been treated better than he in the same scenario. The purported circumstances surrounding Harmon's termination, coupled with his well-pleaded allegations about the Lovely's conduct for a period of eighteen months, are sufficient to give rise to an inference of discrimination on the part of Coastal. At this motion-to-dismiss stage, Harmon needs only plead facts that, if true, create an inference of discrimination attributable to his employer. He has done so here. As such, Harmon sufficiently pleads a claim of discrimination under both Title VII and the Maryland Fair Employment Practices Act. The Motion to Dismiss (ECF No. 16) Count I is DENIED.

## II.    Count II: Retaliation

Count II alleges that Coastal retaliated against Harmon by terminating him less than one month after he raised a complaint of discrimination by Lovely to the company's human resources department. (*Id.* ¶¶ 40–49.) Just as with discrimination, courts consider retaliation

claims pursuant to Maryland law and Title VII together. *See Barreto v. SGT, Inc.*, 826 F. App'x 267, 271 (4th Cir. 2020) (applying these elements to both federal law and Maryland law together).

In addition to prohibiting discrimination, Title VII also prohibits retaliating against an employee for complaining about prior discrimination or retaliation. *Johnson*, 163 F.4th at 819 (citing 42 U.S.C. § 2000e-3(a)). Here, too, a plaintiff may proceed through either direct evidence of retaliatory animus, or through the *McDonnell-Douglas* burden-shifting framework. *See Johnson*, 163 F.4th at 819; *Kasmir v. Retail Servs. & Sys., Inc.*, 330 A.3d 755, 773–74 (Md. Ct. App. 2025) (applying *McDonnell Douglas* to retaliation claims under the Maryland Fair Employment Practices Act). To state a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in a protected activity; (2) the employer took an adverse action against him; and (3) a causal relationship existed between the protected activity and the adverse employment action. *Johnson*, 163 F.4th at 819 (citing *Foster*, 787 F.3d at 249; *Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025)). At the motion-to-dismiss stage, however, "a plaintiff need not establish a prima facie case." *Id.* Instead, he "must merely produce sufficient factual allegations, accepted as true, to state 'a claim to relief that is plausible on its face.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Here, Coastal argues that the first two elements are not met. It raises no argument as to the third element, causation.[8] For the same reasons as discussed above, the second element

---

[8] Even if Coastal had contested causation, that argument would have failed. A plaintiff can show causation in a retaliation claim either by (1) establishing temporal proximity between the protected activity and the adverse action; or (2) by establishing other relevant evidence that indicates continuing retaliatory conduct and animus towards the plaintiff. *Johnson*, 163 F.4th at 819 (internal citations and quotations omitted). Less than one month between the

is quickly met. There was clearly an adverse employment action here. Termination is the quintessential adverse employment action. *See Hoyle*, 650 F.3d at 337 (quoting *Ellerth*, 524 U.S. 759); *Roberts*, 998 F.3d at 123.

The first element, engaging in a protected activity, is also met. In a retaliation claim, a "protected activity" can fall into one of two categories: opposition and participation. *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). Opposition is the only relevant form here. Protected oppositional activities include "'voicing one's own opinions in order to bring attention to an employer's discriminatory activities,' as well as 'complaints about suspected violations.'" *Id.* (cleaned up) (quoting *Bryant*, 333 F.3d at 543–44); *Strothers v. City of Laurel*, 895 F.3d 317, 328 (4th Cir. 2018) (protected activities "include[] complain[ts] to superiors about suspected violations of Title VII"). Title VII "protects activity in opposition not only to employment actions actually unlawful under Title VII but also employment actions an employee reasonably believes to be unlawful." *Id.* (citing *United States ex rel. Wilson v. Graham Cnty. Soil & Water Conservation Dist.*, 367 F.3d 245, 255 (4th Cir. 2004)).

Coastal argues that Harmon's email complaint of September 25, 2024, to its human resources department could not have been a protected activity because Harmon's perception of events as unlawful was not objectively reasonable under the circumstances. (ECF No. 16-1 at 10.) It argues that Harmon's taking offense to Lovely's conduct was not sufficient to tip

---

protected activity and the adverse employment action is sufficient temporal proximity to plead the causation element. *See Foster*, 787 F.3d at 253 (finding that gap of just under one month "*tend[ed] to show causation*"); *King v. Rumsfeld*, 328 F.3d 145, 151 & n.5 (4th Cir. 2003) (finding that a two-and-a-half month gap was sufficiently narrow to establish causation solely on the basis of temporal proximity); *Carter v. Ball*, 33 F.3d 350, 460 (4th Cir. 1994) (six weeks sufficient to show temporal proximity).

Coastal's actions into unlawful territory for the purposes of Title VII. In support of this argument, Coastal cites *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 268 (4th Cir. 2015) (en banc), a 2015 en banc decision of the Fourth Circuit. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 268 (4th Cir. 2015) (en banc). The facts of that case, however, directly undercut Coastal's position. There, Reya Boyer-Liberto, an African-American cocktail waitress at a resort in Ocean City, Maryland, alleged that she was twice in one day called derogatory racial epithets by her White restaurant manager. *Id.* The very same day, he also threatened to fire her. *Id.* Boyer-Liberto reported the alleged harassment to her higher-ups at the hotel but was soon fired. *Id.* She sued her employer, alleging retaliation and hostile work environment under Title VII and 42 U.S.C. § 1981. *Id.* After the district court granted summary judgment for the defendants, a divided panel of the Fourth Circuit affirmed. *Id.* Upon rehearing en banc, the full Fourth Circuit vacated the judgment of the district court. *Id.* It held, in relevant part, that "an employee is protected from retaliation when she reports an isolated incident of harassment that is physically threatening or humiliating." *Id.*

The factual allegations in this case are meaningfully similar. Here, Harmon alleges that multiple times from March 2023 to September 2024, he was racially harassed by his supervisor, Lovely. At least two of those instances occurred in meetings with many other members of the Coastal team, including other members of the senior leadership team. As recounted above, in one alleged interaction, Lovely stood up in a meeting with many other people, pointed at Harmon, and yelled "racist" multiple times when he raised concerns about the company's grooming policies and their effects on Black employees. The Complaint also details multiple instances of private interactions between Lovely and Harmon. For example, the Complaint

18

alleges that Lovely told Harmon that she called her black nephew "boy." Harmon claims this made him feel humiliated and ostracized. Of note, on July 10, 2024, Lovely commented that two other White women employees and she were the "Big Three" of Coastal, and that Harmon could be their driver. In each of these instances, Harmon alleges that he felt humiliated. Under the clear holding of the Fourth Circuit in *Boyer-Liberto*, the occurrence of even one instance of racial harassment suffices, when reported by the employee, to create a protected activity. Harmon's email of September 25, 2024, to Coastal's human resources department was a protected activity. He sufficiently pleads the first element of the retaliation claim.

In sum, Harmon adequately pleads the three elements of a retaliation claim under Title VII and the Maryland Fair Employment Practices Act. As such, the Motion to Dismiss (ECF No. 16) is DENIED as to Count II.

### III. Count III: Hostile Work Environment

In Count III, Harmon alleges that he was subjected to a hostile work environment from March 2023 to September 2024. (ECF No. 1 ¶¶ 50–55.) He claims that this environment began "almost immediately after hiring" Lovely. (*Id.* ¶ 51.) He alleges that the discriminatory and harassing conduct was so severe and pervasive as to deprive him of his ability to fulfill the duties of his job. (*Id.* ¶ 52.) He further claims that Lovely committed these alleged actions within the scope of her employment as Harmon's supervisor and that, accordingly, Coastal is liable for Lovely's actions. (*Id.* ¶¶ 53–54.) Again, as with discrimination and retaliation, courts analyze claims of hostile work environments under Title VII and the Maryland Fair Employment Practices Act under the same standard. *Membreno v. Atlanta Rest. Partners, LLC*, 517 F. Supp. 3d 425, 435 (D. Md. 2021) (collecting cases).

19

Under Title VII, an employer acts unlawfully when it requires an employee to work in a racially hostile work environment. *Boyer-Liberto*, 786 F.3d at 277 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–67 (1986)). "A hostile environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To prevail on a Title VII claim of hostile work environment, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's . . . race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer."[9] *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011). Coastal contests only the second and third elements.

As to element two, Harmon's Complaint adequately alleges that he was subject to unwelcome conduct based on his race. Coastal argues that the Complaint does not establish any "plausible connection between [its] conduct and his race." (ECF No. 16-1 at 9.) A plaintiff alleging a hostile work environment must allege that he was harassed or discriminated against "because of" his race. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000) (internal citation omitted). He must allege that, "but for" his protected class, he would not have suffered unwanted conduct. *Id.* Harmon's Complaint clearly alleges that he would not have been

---

[9] An "extremely serious" isolated incident of harassment can suffice to plead a hostile work environment claim. *See Boyer-Liberto*, 786 F.3d at 268 (citing *Faragher*, 524 U.S. at 788). In many cases, however, a viable hostile work environment claim involves allegations of repeated conduct. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–17 (2002). In this case, Harmon does not argue that any one alleged incident of harassment suffices to plead his claim. *See generally* (ECF No. 17). Instead, he relies on the entire series of alleged instances of harassment. *See* (ECF No. 1 ¶¶ 50–55).

subjected to the putative unwanted conduct except for his being Black. *See* (ECF No. 1 ¶ 15). For example, in March 2023, Lovely allegedly asked Harmon, a Black man, to tell two Black auditors that she, a White woman, was not a racist. (*Id.* ¶ 15(a).) She allegedly asked Harmon to show the auditors a picture of her Black husband as proof. (*Id.*) Later, in October 2023, Harmon purportedly raised concerns about the company's grooming policies, particularly as to how those policies might have targeted employees of color, a direct implication of race. (*Id.* ¶ 15(b).) The Complaint alleges that, in response, Lovely stood up, pointed at Harmon, yelled "Racist!" multiple times, and then announced that she did not want Coastal to employ anyone with "unnatural" hair or nails. (*Id.*) Harmon alleges that in August 2024, Lovely told Harmon that she had referred to her Black nephew as "boy," despite being asked not to by Black members of her family, including her husband, because of the racist connotations of that term. (*Id.* ¶ 15(e).) Harmon adequately pleads that he was the recipient of unwanted conduct because of his race.

Harmon also sufficiently pleads the third element of the claim. "Element three of a hostile work environment claim requires a showing that 'the environment would reasonably be perceived, and is perceived, as hostile or abusive.'" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 22). The subjective portion of this element—that is, Harmon's perception of hostility from Coastal—is not disputed. Instead, Coastal argues that the third element is not met because none of the conduct alleged in the Complaint was objectively severe or pervasive. (ECF No. 16-1 at 5.)

To determine whether alleged conduct was objectively severe and pervasive such that it altered the conditions of employment and created an abusive work environment, a district

court considers the perspective of a reasonable person in the plaintiff's position. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). This is a totality of the circumstances inquiry which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. This is not, and cannot be, "a mathematically precise test." *Id.* at 22. As such, a district court must apply "common sense" and "appropriate sensitivity to social context" to the "constellation of surrounding circumstances." *Oncale*, 523 U.S. at 82.

Title VII is not a "general civility code," and so "simple teasing [and] offhand comments" do not sufficiently affect the conditions of employment to trigger Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998). This is also true for the "'mere utterance of an . . . epithet which engenders offensive feelings in an employee.'" *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank, FSB*, 477 U.S. at 67). However, in considering whether conduct is sufficiently severe or pervasive, the status of the alleged harasser may be significant. *Boyer-Liberto*, 786 F.3d at 278. This is because conduct by a supervisor "'impacts the work environment far more severely than [the same conduct] by co-equals.'" *Boyer-Liberto*, 786 F.3d at 278 (quoting *Rodgers v. W.–S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)). "[A] supervisor's power and authority invests his or her harassing conduct with a particular threatening character." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763 (1998); *see also Boyer-Liberto*, 786 F.3d at 278 (relying on *Ellerth* in ruling that supervisor's actions constituted severe or pervasive conduct creating a hostile work environment)

Coastal cites a recent case of the Fourth Circuit, *Decoster v. Becerra*, 119 F.4th 332, 335 (4th Cir. 2024), to argue that Lovely's alleged actions towards Harmon were neither severe nor pervasive. (ECF No. 16-1 at 7.) In that case, the plaintiff, Tijuana Decoster, an African American woman and former employee of the United States Department of Health and Human Services ("HHS"), sued her former employer, alleging, among other claims, a hostile work environment under Title VII. *Id.* As relates to that claim, Decoster alleged that her supervisor at HHS praised non-African American employees while, at the same time, singled her out in front of her colleagues and criticized her work performance. *Id.* at 338. She claimed that the supervisor treated her with "contempt" and "disdain" amounting to harassment for a period of seven months. *Id.* Decoster claimed that she "involuntarily retired" and then sued. *Id.* The district court granted the motion to dismiss. *Id.* at 337 (internal citation omitted). The Fourth Circuit affirmed. It ruled that Decoster had failed to plead a plausible claim of a hostile work environment because the complaint lacked "specific facts that would demonstrate that [her supervisor at HHS] engaged in the kind of discriminatory intimidation, ridicule, and insult that [would] characterize[] a hostile work environment claim." *Id.* at 339 (cleaned up). Instead, the complaint "center[ed] on a difficult working relationship," that, while unpleasant, was not abusive. *Id.*

Further, district courts in this circuit often rule that *work-related* criticism does not create a hostile work environment. *See, e.g.*, *Lambert v. Savasenior Admin. Servs., LLC*, No. DLB-20-2768, 2022 WL 3027993, at *15 (D. Md. July 29, 2022) (ruling that four "angry, work-related criticism[s]" and one instance of supervisor invaliding personal space were not severe or pervasive). Criticism unrelated to work performance, however, that focuses on a protected

trait, can often create a plausible claim of an abusive work environment. *See, e.g.*, *Boyer-Liberto*, 786 F.3d at 280.

Despite Coastal's arguments to the contrary, Harmon's allegations in his Complaint clearly rise above the alleged harassing conduct in *Decoster*. Whereas in that case the plaintiff alleged that her supervisor criticized her work performance in front of other employees, Lovely's alleged conduct was both more severe and different in kind. Harmon alleges that, during one meeting with many other people, Lovely stood up, pointed at him, and yelled "Racist!" multiple times. (ECF No. 1 ¶ 15(b).) This was not a criticism of work performance or mere treatment with disdain by a supervisor. *See Decoster*, 119 F.4th at 339; *Lambert*, 2022 WL 3027993, at *15. Instead, this alleged conduct involved discriminatory intimidation, ridicule, and insult.

The same is true for the allegation of July 10, 2024. (*Id.* 15(c).) There, Lovely purportedly told two White female coworkers, also members of Coastal's senior leadership team, that they comprised the company's "Big Three" and that Harmon, standing nearby, could be their driver and "drive [them] around." This allegation, too, is unrelated to work performance. *See Lambert*, 2022 WL 3027993, at *15. Lovely's alleged conduct in these two instances is more than simple teasing or criticism. *See Faragher*, 524 U.S. at 778. Likewise, despite Coastal's arguments to the contrary, Harmon's allegations in the Complaint are more than simple "grievances about 'the management style or decisions of [supervisors].'" (ECF No. 16-1 at 7 (quoting *Wooten v. Univ. of Md., Balt.*, 733 F. Supp. 3d 402, 428 (D. Md. 2024)).) This is more than the "difficult working relationship" between *Decoster* and her HHS supervisor. *See* 119 F.4th at 339.

As both the Supreme Court and Fourth Circuit have noted, the status of the alleged harasser can be a significant factor. *See Ellerth*, 524 U.S. at 763; *Boyer-Liberto*, 786 F.3d at 278 (internal citation omitted). In this case, Lovely was Harmon's supervisor. Her alleged statements to him over the course of eighteen months, including the two discrete instances noted above, are "invest[ed] . . . with a particular threatening character" because of her supervisory role. *Ellerth*, 524 U.S. at 763. Likewise, this Court is charged with applying its "common sense" and an "appropriate sensitivity to social context" to the totality of the circumstances alleged in the Complaint. *Oncale*, 523 U.S. at 82. Under the totality of the circumstances that Harmon alleges in this case, he has sufficiently pleaded unwanted conduct based on his race that is severe and pervasive enough to alter the conditions of his employment and create an abusive work environment. It is not disputed that Lovely's conduct is imputable to Coastal. Therefore, Harmon adequately pleads a claim of hostile work environment under Title VII and the Maryland Fair Employment Practices Act. Coastal's Motion to Dismiss (ECF No. 16) Count III is DENIED.

## CONCLUSION

For the reasons stated above, Coastal's Motion to Dismiss (ECF No. 16) is DENIED.

A separate Order follows.

Date: March 25, 2026

/s/
_____
Richard D. Bennett
United States Senior District Judge

25